No. 91-208

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

THE MONTANA DEPARTMENT OF REVENUE,

Petitioner and Appellant,

-vs-

UNITED PARCEL SERVICE, INC., a corporation,

Respondent and Respondent.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Geralyn Driscoll, Department of Revenue, Helena,
Montana.

For Respondent:

James P. Sites, Crowley, Haughey, Hanson, Toole &
Dietrich, Billings, Montana: Richard D. Birns and
Joan E. Kreider Bradwell, Schnader, Harrison, Segal
& Lewis, Philadelphia, Pennsylvania.

FILED

JAN 1 4 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: November 21, 1991

Decided: January 14, 1992

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The Department of Revenue appeals from an order of the First Judicial District, Lewis and Clark County, affirming an order of the State Tax Appeal Board. We affirm.

The issues on appeal are:

1. Whether the District Court erred in concluding that the mileage method of computing United Parcel Service's Montana revenue overstated the actual amount of such revenue.

2. Whether the District Court erred in concluding that § 15-31-312, MCA, authorized the State Tax Appeal Board to determine a method used in the apportionment formula results in an unfair representation of UPS's business activity in Montana.

United Parcel Service, Inc. (UPS) is an authorized motor carrier, specializing in a nationwide small package pick-up and delivery service. Under UPS's operating authorities (Interstate Commerce Commission and Montana Public Service Commission), it is required to treat each package as a separate and distinct shipment, with a size and weight limit on each package. The charge per package is based on 1) the weight of the package, 2) the rate zone to which each package is sent (based on United States Postal Service rate zones), and 3) a package service charge. UPS's primary competition is the United States Postal Service.

UPS has developed a unique operating system in order to provide its specialized, nationwide small package pick-up and delivery service. UPS divides the United States into "operating areas." Within each operating area, an "operating center"

2

headquarters the brown vans, and initial and final package sorting takes place.

Each morning, the brown vans set out from the operating center for delivery within the operating area. After the packages are delivered, the driver becomes a pick-up driver. At the end of the day the pick-up packages are returned to the operating center. The packages are sorted into two groups. One group consists of packages remaining within the operating area, the other group consists of packages destined for addresses within another operating area. These packages are delivered to larger sorting centers termed "hubs." Due to this method, vehicle miles may be quite different from the distance between origin and destination.

Reports prepared by UPS indicate that Montana has a population of 5.4 people per square mile. UPS's operating statistics revealed that UPS's Montana miles per driver were 148 miles compared to between 47 and 89 miles in other districts in the northwest region. Further, UPS transported 1.71 packages per mile in Montana as compared with 4.68 to 9.10 packages per mile in the other districts in the northwest region. During the audit period (1977-1982) Montana package van drivers carried fewer packages per van than drivers in any other state, and had the lowest pounds of packages transported.

UPS is a multi-state, unitary corporation and therefore calculates Montana taxable income using formula apportionment. In 1983, the Department of Revenue (the Department) audited the corporate license tax returns UPS filed for 1977 through 1982. The

Department calculated Montana taxable income using the mileage method based on § 42.26.264, ARM. In 1985, the Department assessed an additional tax to UPS. UPS appealed the assessment to the State Tax Appeal Board (STAB).

Prior to the audit, UPS used a "gross billed method" to calculate taxable income. STAB issued findings of fact, conclusions of law, and order, which ruled that the Department's "mileage method" of calculating the sales factor is an inappropriate method and ordered the Department to use the "adjusted revenue method."

The District Court affirmed STAB's findings of fact, conclusions of law and order. However, the District Court found STAB confused the "adjusted revenue method" with the "state-to-state method" and remanded to STAB to correct the terminology. This appeal followed.

The standard of review used by this Court in reviewing agency (STAB) findings of fact is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Section 2-4-704, MCA (1991). In reviewing conclusions of law, we will determine if the agency's (STAB) interpretation of the law is correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

I

Whether the District Court erred in concluding that the mileage method of computing United Parcel Service's Montana revenue overstated the actual amount of such revenue.

4

Recently this Court reviewed Montana's Corporation License Tax. We said:

Every corporation engaged in business in the State of Montana must pay annually to the state treasurer as a license fee for the privilege of carrying on business in this state a percentage of its total net income...In the case of corporations having income from business activity which is taxable both within and without this state, the license fee is measured by the net income derived from or attributable to Montana sources as determined under the Corporation License Tax Act. Section **15-31-101 (3),** MCA.

Montana, to overcome the difficulty, when a corporation engages in a unitary business in more than one state, of determining the corporation's income and expenses generated from its activities in Montana, has adopted the Uniform Division of Income for Tax Purposes Act (UDITPA). Under the UDITPA method, business income is apportioned to each jurisdiction based on a three-factor apportionment formula. The factors are property, payroll and sales. **.** **.** **.**

Am. Tele. & Tele. v. State Tax Appeal Board (1990), 241 Mont. **440, 443, 787** P.2d **754, 756.**

Section **15-31-305,** MCA (1991), sets forth the formula for apportioning business income under the UDITPA. "All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor and the denominator of which is **3."** Sections **15-31-306** to **15-31-311,** MCA, provide the definitions for the property, payroll and sales factor and guidelines for the proper formulas used in the equations.

Only the sales factor is in dispute here. Sections **15-31-310** and **15-31-311,** MCA, are the definitional sections for the sales factor within the apportionment formula:

The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the

5

tax period and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

Section 15-31-311, MCA, provides in part:

> (2) Sales, other than sales of tangible personal property, are in the state if:
> (a) the <u>income-producing activity</u> is performed in the state: or
> (b) the <u>income-producing activity</u> is performed both in and outside this state and a greater proportion of the income-producing activity is performed in this state than in any other state, based on costs of performance. (Emphasis added.)

The term "sales" is defined in § 15-31-302 (5), MCA, as "all gross receipts of the taxpayer". . . Thus, since **"sales"** is all gross receipts of the taxpayer, under §§ 15-31-310 and 311, MCA, the sales factor must be based on the revenue received by the taxpayer.

The Department used the "mileage method" in determining the sales factor for the apportionment formula. The Department argues that UPS must prove the "mileage method" distorts its income prior to invoking the relief provision of § 15-31-312, MCA, relying on Trinova Corp. v. Michigan Dept. of Treasury (1991), ___ U.S. ___, 111 S.Ct. 818, 112 L.Ed.2d 884.

However, <u>Trinova</u> involved constitutional claims relating to Michigan's apportionment formula as applied to Trinova. <u>Trinova</u> at ___, 111 S.Ct. at 829, 112 L.Ed.2d at 904. UPS does not challenge Montana's identical three-factor apportionment formula. Rather, UPS argues that under Montana law the mileage method utilized by the Department does not fairly represent the extent of its business activity within the State.

Section 15-31-312, MCA, is the relief provision under UDITPA.

It provides in part:

> If the allocation and apportionment provisions of this part do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the tax administrator may require, in respect to all or any part of the taxpayer's business activity, if reasonable
>
> **(4)** the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

We find no authority for the State's argument that UPS must prove the mileage method distorts its Montana income prior to invoking the relief provision under § 15-31-312(4), MCA.

In Am. Tele. & Tele. v. State Tax Appeal Board (1990), 241 Mont. 440, 448, 787 P.2d 754, the tax administrator invoked the relief provision under § 15-31-312, MCA. In AT&T we held the Department properly invoked § 15-31-312, MCA, because the inclusion in gross receipts of returns on temporary cash investments in the sales factor did not fairly represent the extent of the taxpayer's business activity within the state. Am. Tele. & Tele. at 448, 787 P.2d at 759.

UPS put forth substantial evidence to show the mileage method did not fairly represent its business activity within Montana. Evidence before STAB revealed that UPS drivers in Montana drive more miles to deliver fewer packages than drivers in any other state, and that average revenue per mile varies substantially from state to state. Further, STAB found that expert testimony presented by UPS revealed the underlying differences between UPS and other freight carriers, and that the mileage method for calculating revenue was less precise for UPS.

7

The mileage method is calculated by dividing the number of miles traveled by UPS in Montana by the total miles traveled by UPS nationally, and multiplying the percentage by the total revenue received by UPS. STAB ordered that the sales factor be calculated by the "adjusted revenue method," that is, using numbers of packages of an average weight (10-11 pounds), at the rate for the furthest zone in each state. Fifty percent of the interstate pick-ups and deliveries are attributed to Montana, and one hundred percent of the Montana intrastate pick-ups and deliveries are attributed to Montana.

The District Court correctly found STAB's discussion of the "adjusted revenue method" to be a misnomer, which was really the "state-to-state" revenue analysis method. The "adjusted revenue method" allocates revenue between two UPS corporations. Wholly intrastate packages must be assessed at fifty percent to avoid double counting. The District Court found that STAB's **use** of the "adjusted revenue method" referred to an adjustment under the state-to-state method to avoid double counting of packages both picked up and delivered in Montana.

We therefore conclude that reliable, probative, and substantial evidence existed to support STAB's findings of fact and that STAB's interpretation of the law was correct. For the foregoing reasons we affirm the District Court on the first issue.

II

Whether the District Court erred in concluding that § 15-31-312, MCA, authorized the State Tax Appeal Board to determine a

8

method used in the apportionment formula results in an unfair representation of UPS's business activity in Montana.

Section 2-4-102, MCA, is a definitional section. Part **(11)** provides:

(11) "Substantive rules" are either:
(a) legislative rules, which if adopted in accordance with this chapter and under expressly delegated authority to promulgate rules to implement a statute have the force of law and when not so adopted are invalid; or
(b) adjective or interpretive rules, which may be adopted in accordance with this chapter and under express or implied authority to codify an interpretation of a statute. The interpretation lacks the force of law.

The Department maintains that § 42.26.264, **ARM,** has the force of law. It is true that the Department promulgated rules to implement Title **15,** Chapter **31** under MAPA. See § **15-31-313,** MCA **(1991).** The Department promulgated rules in § 42.26.264, **ARM,** related to freight and passenger carriers which is the basis of the "mileage method." Section 42.26.264 provides:

SPECIAL COMPUTATIONS RELATED TO FREIGHT AND PASSENGER CARRIERS **(1) A** portion of the net income of taxpayers engaged in the transportation of freight or passengers within and without Montana may be attributed to the movement of revenue-producing equipment, drivers, train crews, or other operating personnel across the state.
(2) The percentage of miles traveled within Montana to total miles traveled everywhere shall be the percentage used in determining the amount of income attributable to this state. The apportionment formula for such transportation companies shall be computed as follows:
(a) Fixed properties, such as buildings and land used in the business, terminal facilities, shop equipment, and cars and trucks used in gathering or delivering local freight, shall be assigned to the state in which such properties are located. The value of equipment used in interstate transportation shall be assigned to this state on the mileage basis.
(b) The wages and salaries of employees assigned to

9

fixed locations as officers or clerical, administrative, pick-up and delivery, or terminal personnel within this state shall be included in the Montana payroll factor. The wages of personnel operating transportation equipment within and without this state shall be assigned to this state upon the basis of miles. The wages of such personnel shall be assigned to Montana in proportion that miles traveled within this state bear to the total miles traveled everywhere.

(c) Revenues will be assigned to this state in the proportion that the miles traveled within the state bear to the total miles traveled everywhere. All other revenue shall be assigned in accordance with the provisions of 15-31-310 and 15-31-311, MCA, and ARM 42.26.151 through 42.26.253 and 42.26.257.

The District Court found that the Department's authority to promulgate regulations to carry out UDITPA does not insulate it from challenges to the validity and breadth of its regulations. The District Court held that under Bick v. State Department of Justice (1986), 224 Mont. 455, 457, 730 P.2d 418, 420, administrative agencies enjoy only powers specifically conferred upon them by the legislature, and agency rules must be strictly confined within the applicable legislative guidelines. Further, the rule must be reasonably necessary to effectuate the purpose of the statute. Bick at 458, 730 P.2d at 421.

The District Court further found that although the legislature left it up to the Department to develop a method of calculating "income producing activity" for the sales factor portion of the three-factor formula, the method must be based on revenue received by the taxpayer under the statutory definition of "sales." Further, § 15-31-312, MCA, requires an equitable representation of the taxpayer's business activity within the State. UPS put forth substantial evidence to show the "mileage method" did not equitably

10

represent its business activity within the State. We conclude above that UPS may petition for an alternative method of apportionment under § 15-31-312(4), MCA.

Additionally, § 42.26.264, ARM, also sets forth the "mileage method" in determining both the property and payroll factors of the three-factor formula. The Department chose not to use the milage method to calculate property and payroll for UPS. Yet, the Department insists it must use the mileage method for the sales factor. The Department's application of the regulation to the three-factor formula is inconsistent. Its argument, therefore, fails.

We conclude that the District Court's interpretation that § 15-31-312, MCA, authorized STAB to find the mileage method results in an inequitable representation of UPS's business activity within Montana is correct. We therefore affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11

January 14, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Geralyn Driscoll, Legal Counsel
Dept. of Revenue
Mitchell Bldg.
Helena, MT  59620

James P. Sites
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT  59103

Richard D. Birns
Schnader, Harrison, Segal & Lewis
Ste. 3600, 1600 Market St.
Philadelphia, PA   19103


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
        Deputy